### COMMONWEALTH *vs.* JOSEPH H. SPARKS.

The husband of a woman with whom an act of criminal intercourse is alleged to have been committed by the defendant in an indictment for adultery is not a competent witness to prove the commission of the offence.

INDICTMENT for adultery with Mary H. Davis.

At the trial in the superior court, before *Vose*, J., Nathaniel Davis, the husband of said Mary, was called as a witness on the part of the Commonwealth, and was allowed to testify, under objection, that he entered his house secretly in the night and found his wife and the defendant in bed together and asleep. The only evidence to prove the adultery came from this witness. The jury returned a verdict of guilty, and the defendant alleged exceptions.

*T. H. Sweetser & W. S. Gardner*, for the defendant, cited 1 Greenl. Ev. § 342 ; 2 Stark. Ev. (4th Amer. ed.) 709 ; *The State* v. *Welch*, 26 Maine, 30 ; *Fitch* v. *Hill*, 11 Mass. 286.

*Foster*, A. G., for the Commonwealth, cited 1 Phil. Ev. (4th Amer. ed.) 77 ; 2 Russell on Crimes, (7th Amer. ed.) 982 ; *The King* v. *All Saints*, 6 M. & S. 194 ; *Rex* v. *Bathwick*, 2 B. & Ad. 639 ; *Commonwealth* v. *Easland*, 1 Mass. 15 ; *Thompson* v. *Commonwealth*, 1 Met. (Ky.) 13 ; *The State* v. *Dudley*, 7 Wisconsin, 664 ; *Moffit* v. *The State*, 2 Humph. (Tenn.) 99 ; *Workman* v. *The State*, 4 Sneed, (Tenn.) 425.

MERRICK, J. It is a general rule of evidence, universally recognized and admitted, that neither a husband nor a wife is admissible as a witness in any cause, civil or criminal, to which the other is a party. This rule is founded upon principles of public policy which lie at the basis of civil society, and therefore is never to be relaxed, unless in those peculiar cases of legal necessity which constitute exceptions to it. *Davis* v. *Dinwoody*, 4 T. R. 678. *Bentley* v. *Cooke*, 3 Doug. 422. 2 Kent Com. (6th ed.) 178. 1 Greenl. Ev. § 234. 1 Phil. Ev. (4th Amer. ed.) 77. But how far and under what exact limitations either of them may be allowed, in collateral proceedings, not immediately affecting their mutual or individual interests, to testify to facts tending to criminate the other, cannot be said to be equally well settled and understood. In the case of *The King* v. *Cliviger*, 2 T. R. 263, it was laid down by the court in very explicit and positive terms, that neither of them can in any case be permitted to give such evidence; and this was distinctly adjudged by confirming an order of the sessions to that effect, in excluding a woman as a witness who was produced to prove her marriage with a man who had already testified that no such marriage had taken place. But the rule as it was then laid down was afterwards discussed and reëxamined in the same court, and the judges then came to the conclusion that it had been expressed in terms much too general and undefined; and accordingly a woman produced as a witness for the same purpose and under very similar circumstances was allowed to testify to the fact of her marriage. *The King* v. *All Saints*, 6 M. & S. 194. This adjudication was approved of and followed as an authority in a subsequent case, in which Lord Tenterden, remarking upon and explaining it, said that a decision that the wife is an incompetent witness as to every fact which may possibly have a tendency to criminate her husband, or which, connected with other facts, might perhaps form a link in the complicated chain of evidence against him, would go beyond all bounds. *Rex* v. *Bathwick*, 2 B. & Ad. 639. It must, however, be observed that in each of these cases the testimony of the witness had no direct tendency to criminate the husband, inasmuch as, with respect to

the fact concerning which the testimony was given, he was entirely innocent. In the first marriage to which the evidence applied, and for the proof of which it was admitted, he was certainly guilty of no offence; but this fact constituted a necessary link in the chain of evidence by which the nullity of the second, and his guilt in contracting it, was to be established. It has never been determined that a husband or wife is admissible as a witness in any collateral proceeding, to testify directly to the commission of any criminal act of the other. Nor ought such testimony to be received in any proceeding or upon any trial; for, as nothing would be more likely to exasperate the parties and be the means of implacable discord and dissension between them, its admission would be a violation of that principle of public policy upon which the general rule of their exclusion as witnesses against each other is founded. It was so expressly determined in the case of *The State* v. *Gardner*, 1 Root, 485. The same question arose directly in the case of *The State* v. *Welch*, 26 Maine, 30, where the husband of the woman with whom the defendant was, in the indictment against him, alleged to have committed the crime of adultery, was admitted as a witness, and testified that, having suspicions of a guilty intercourse between the parties, he entered his own house by night secretly and found them asleep in bed together. But the court, after reviewing the authorities, and upon full consideration of the principle by which the admission or exclusion of such parties as witnesses against each other is regulated, determined that the testimony of the husband had been erroneously admitted, and ordered that the verdict which had been rendered against the defendant should for that cause be set aside.

A majority of the court are of opinion that that determination, which does not appear to be in conflict with the decision of any court of competent authority and final jurisdiction, was accurate and just, and constitutes a precedent which it is right to follow and sustain. It is exactly in point, in reference to the question presented in the bill of exceptions, and our approval of it leads to the conclusion that the evidence objected to by the defendant should have been excluded, and consequently that his exceptions must be sustained.